OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 17, 2000

The Honorable Kip Averitt
Chair, Financial Institutions Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0296

Re: Whether a manufacturer of bingo equipment
and a distributor of bingo equipment may agree to
the price at which the distributor will sell or lease
bingo equipment to a charity (RQ-0238-JC)

Dear Representative Averitt:

You ask whether a manufacturer of bingo equipment and a distributor of bingo equipment may agree to the price at which the distributor will sell or lease bingo equipment to a charity. Although we do not opine on the legality of any particular contract, we conclude that an agreement of this kind is prohibited by section 2001.556 of the Occupations Code.

The Bingo Enabling Act, chapter 2001 of the Occupations Code (the "Act"), closely regulates the bingo industry, generally prohibiting the conduct of bingo games except by persons licensed under the Act. *See* TEX. OCC. CODE ANN. § 2001.551 (Vernon 2000). The Act provides that only certain religious, charitable, and civic organizations may be licensed to conduct bingo. *See id.* §§ 2001.101-.107 (subchapter C, license to conduct bingo). Licensed authorized organizations must deposit funds derived from the conduct of bingo in a special account, and must disburse a percentage of the receipts for charitable purposes on a quarterly basis. *See id.* §§ 2001.451-.459 (subchapter J, bingo accounts and use of proceeds). The Lottery Commission, which administers the Act, is broadly authorized to "exercise strict control and close supervision over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose." *Id.* § 2001.051(b).

The Act carefully regulates the relationship between manufacturers of bingo equipment, distributors of bingo equipment, and persons licensed to conduct bingo. *See id.* §§ 2001.002(2) (defining "authorized organization"), (9) (defining "distributor"), (16) (defining "manufacturer"); .101 (religious, fraternal, veterans and other charitable organizations eligible for license to conduct bingo); *see also id.* § 2001.551(b)(3), (4) (other persons authorized to conduct bingo). A manufacturer must be licensed and may not be a distributor, *see id.* §§ 2001.201, .202(6), and a distributor must be licensed and may not be a manufacturer, *see id.* §§ 2001.206, .207(6). Under section 2001.407 of the Act, a licensed manufacturer may furnish, by sale or otherwise, bingo

equipment or supplies only to a licensed distributor, with certain very limited exceptions. *See id.* § 2001.407(a) (prohibition), (d) (exception to prohibition providing that licensed organization may lease or purchase certain equipment directly from a licensed manufacturer); *see also id.* § 2001.257(b) ("A system service provider may purchase goods or services from a licensed manufacturer."). Similarly, a licensed distributor may not furnish by sale, lease or otherwise, bingo equipment or supplies to a person other than a licensed authorized organization, another licensed distributor, or a person authorized to conduct bingo. *See id.* § 2001.407(b). Finally, with certain exceptions, a licensed authorized organization or a person authorized to conduct bingo may not obtain by purchase or otherwise bingo equipment or supplies from a person other than a licensed distributor. *See id.* § 2001.407(e); *see also id.* § 2001.407(f) (permitting occasional sale of certain items between licensed authorized organizations).

You ask about section 2001.556, which prohibits price fixing by manufacturers, distributors, and suppliers of bingo equipment, providing:

> (a) A manufacturer, distributor, or supplier may not by express or implied agreement with another manufacturer or distributor fix the price at which bingo equipment or supplies used or intended to be used in connection with bingo conducted under this chapter may be sold.

> (b) The price of bingo supplies and equipment in the competitive marketplace shall be established by the manufacturer, distributor, or supplier and may not be established in concert with another manufacturer, distributor, or supplier.

*Id.* § 2001.556.

You ask about section 2001.556 in relation to a particular contract, which you inform us contains the following provision:

> *[Manufacturer] will establish customer pricing arrangements. No credits, discounts, or any other promotional allowances shall be allowed without [manufacturer's] explicit approval.* Distributor will handle all customer collections. Distributor will remit to [manufacturer] for all revenue due less commission due Distributor on a weekly basis along with a cash receipt report. [Manufacturer] shall be entitled to audit the books of Distributor on a reasonable basis and upon reasonable notice to Distributor. Any such audit shall be limited to only such information as shall be specifically required to

> verify the gross receipts received by Distributor from *customers governed by this Agreement.*[1]

This office does not review or construe specific contracts. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (contract interpretation beyond purview of this office); DM-383 (1996) at 2 (interpretation of contract not appropriate function for opinion process); DM-192 (1992) at 10 ("This office, in the exercise of its authority to issue legal opinions, does not construe contracts."); JM-697 (1987) at 6 ("review of contracts is not an appropriate function for the opinion process"). Therefore, we answer your questions generally and do not express any opinion with respect to the contract giving rise to your query.

First, you ask whether "a manufacturer of bingo equipment and a distributor of bingo equipment [may] agree, expressly or by implication, as to the price at which the distributor will sell . . . the bingo equipment to a charity?" Request Letter, note 1, at 2. We conclude that section 2001.556's price-fixing prohibition applies to price fixing agreements between manufacturers and distributors.

When construing a statute, this office must give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, .023 (Vernon 1998); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex. 1997). To give effect to legislative intent, we construe a statute according to its plain language. *See RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607-08 (Tex. 1985); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n,* 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.). We may also consider, among other things, the circumstances under which a statute was enacted, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998).

We believe it is clear from the plain language of section 2001.556 that it prohibits price fixing agreements between manufacturers and distributors. Again, section 2001.556 provides that "[a] *manufacturer,* distributor, or supplier *may not by express or implied agreement with another* manufacturer or *distributor* fix the price at which bingo equipment or supplies used or intended to be used in connection with bingo conducted under this chapter may be sold." TEX. OCC. CODE ANN. § 2001.556(a) (Vernon 2000) (emphasis added). In addition, subsection (b) of section 2001.556 states that "[t]he price of bingo supplies and equipment in the competitive marketplace *shall be established by the manufacturer, distributor, or supplier* and may not be established in concert with another manufacturer, distributor, or supplier," *id.* § 2001.556(b) (emphasis added), reiterating that each manufacturer, distributor, and supplier must act independently in establishing prices. This reading of section 2001.556(b) is supported by the language of its statutory predecessor, section 13d of former article 179d of the Revised Civil Statutes, which provided that:

---

[1]Letter from Honorable Kip Averitt, Texas State Representative, Chair, Financial Institutions Committee, to Honorable John Cornyn, Texas Attorney General at 2 (June 1, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

> A manufacturer, distributor, or supplier may not, by express or implied agreement with another manufacturer, distributor, or supplier, fix the price at which bingo equipment, devices, or supplies used or intended to be used in connection with any bingo game conducted under this Act may be sold. *The price of these items in the competitive market place shall be established by the manufacturer, distributor, or supplier and may not be established directly or indirectly in concert with one another.*

Act of May 25, 1983, 68th Leg., R.S., ch. 575, § 11, 1983 Tex. Gen. Laws 3443, 3464, *repealed and codified by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, §§ 1, 6, 1999 Tex. Gen. Laws 1431, 2354, 2439 (emphasis added); *see also* TEX. GOV'T CODE ANN. § 311.023(2), (3), (4) (Vernon 1998) (authorizing court in construing statute to consider circumstances under which statute enacted, legislative history, and former statutory provisions).

Although its prohibition against "fix[ing] the price" of bingo equipment is reminiscent of antitrust law, we do not believe that antitrust law should guide our construction of section 2001.556. First, the language of section 2001.556 is not modeled on Texas antitrust law. Section 2001.556 prohibits all express and implied price fixing agreements, regardless of their effect, whereas the state's antitrust statute, chapter 15 of the Business and Commerce Code, the Texas Free Enterprise and Antitrust Act of 1983, generally looks to the economic effect of an arrangement. *Compare* TEX. OCC. CODE ANN. § 2001.556 (Vernon 2000), *with* TEX. BUS. & COM. CODE ANN. § 15.05(a) (Vernon Supp. 2000) ("Every contract, combination, or conspiracy *in restraint of trade or commerce* is unlawful.") (emphasis added), (h) ("In any lawsuit alleging a contract, combination, or conspiracy to fix prices, evidence of uniform prices alone shall not be sufficient to establish a violation of Subsection (a) of Section 15.05."); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 687 (Tex. 1990) (under Business and Commerce Code section 15.05(a) "[s]ome restraints, because of their inherently pernicious effect upon competition, are per se unreasonable, while others are not and must be analyzed under the rule of reason"); *see also* TEX. BUS. & COM. CODE ANN. § 15.05(c) (Vernon Supp. 2000) ("It is unlawful for any person to sell, lease, or contract for the sale or lease of any goods, whether patented or unpatented, for use, consumption, or resale or to fix a price for such use, consumption, or resale or to discount from or rebate upon such price, on the condition, agreement, or understanding that the purchaser or lessee shall not use or deal in the goods of a competitor or competitors of the seller or lessor, *where the effect of the condition, agreement, or understanding may be to lessen competition substantially in any line of trade or commerce.*") (emphasis added), (d) ("It is unlawful for any person to acquire, directly or indirectly, the whole or any part of the stock or other share capital or the assets of any other person or persons, *where the effect of such acquisition may be to lessen competition substantially in any line of trade or commerce.*") (emphasis added).

Second, the legislative history of section 2001.556 suggests it should not be construed as an antitrust provision. Indeed, the difference in language between section 2001.556 and chapter 15 of the Business and Commerce Code is especially significant because the state's antitrust statute was

substantially revised in 1983 by the Sixty-eighth Legislature,[2] the same legislature that enacted the statutory predecessor to section 2001.556.[3] Had that legislature intended section 2001.556 merely to reflect antitrust concerns, we believe the language of section 2001.556 would be closer to the language of the antitrust statute. Moreover, given that the Sixty-eighth Legislature was fully aware of the existence and substance of antitrust law, we believe that the legislature must have intended section 2001.556 to have a meaning separate and apart from antitrust law and did not intend section 2001.556 to be merely redundant of antitrust law. *See* TEX. GOV'T CODE ANN. §§ 311.021(2) (Vernon 1998) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective . . . ."); .023(2), (5) (providing that court in construing statute may consider circumstances under which statute was enacted and consequences of a particular construction).

Third, section 2001.556 appears to have a different purpose than antitrust law. Although the legislative history is silent with respect to the purpose of section 2001.556,[4] it appears that this provision is concerned less with free enterprise and competitive pricing than with strict regulation of manufacturers and distributors of bingo equipment and their relationships with persons who conduct bingo. Other provisions in the Bingo Enabling Act reflect this regulatory goal. *See, e.g.,* TEX. OCC. CODE ANN. § 2001.407 (Vernon 2000) (governing commercial relationships between manufacturers, distributors, and persons who conduct bingo); *id.* §§ 2001.201-.218 (subchapter E, licensing of manufacturers and distributors). In this regard, section 2001.556 is unlike antitrust provisions and very like section 102.75 of the Alcoholic Beverage Code, a provision in the Beer Industry Fair Dealing Law, which prohibits a beer manufacturer from "fix[ing] or maintain[ing] the price at which a distributor may resell beer." TEX. ALCO. BEV. CODE ANN. § 102.75(3) (Vernon 1995). The purpose of the Beer Industry Fair Dealing Law is not only to assure competitive prices, but also to assure the independence of beer distributors and to regulate the contractual relationship between manufacturers and their distributors. *See id.* § 102.72 (purpose of Beer Industry Fair Dealing Law). Section 2001.556 appears animated by the same regulatory purpose. In addition, section 2001.556 may also be intended to maximize the amount of bingo proceeds generated by

---

[2]*See* Act of May 26, 1983, 68th Leg., R.S., ch. 519, § 1, 1983 Tex. Gen. Laws 3010 (enacting Texas Free Enterprise and Antitrust Act of 1983 in chapter 15 of the Business and Commerce Code).

[3]*See* Act of May 25, 1983, 68th Leg., R.S., ch. 575, § 11, 1983 Tex. Gen. Laws 3443, 3464 (enacting article 179d, section 13d of the Revised Civil Statutes).

[4]*See, e.g.,* SENATE COMM. ON ECON. DEV., BILL ANALYSIS, Tex. S.B. 741, 68th Leg., R.S. (1983); HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. S.B. 741, 68th Leg., R.S. (May 19, 1983); *Hearings on Tex. S.B. 741 Before the Senate Comm. on Econ. Dev.,* 68th Leg., R.S. (Apr. 5, 1983) (tape available from Texas State Library and Archives); *Hearings on Tex. S.B. 741 Before the House Subcomm. on Revenue,* 68th Leg., R.S. (Apr. 13, 1983) (tape available from House Audio Video Services); *Hearings on Tex. S.B. 741 Before the House Comm. on Ways & Means,* 68th Leg., R.S. (Apr. 20, 1983) (tape available from House Audio Video Services); *Debate on Tex. S.B. 741 on the Floor of the Senate,* 68th Leg., R.S. (Apr. 11, 1983) (tape available from Texas State Library and Archives); *Debate on Tex. S.B. 741 on the Floor of the House,* 68th Leg., R.S. (May 20, 1983) (tape available from House Audio Video Services); FISCAL NOTE, Tex. S.B. 741, 68th Leg., R.S. (Mar. 28, 1983); *see also* HOUSE STUDY GROUP, SPECIAL LEGISLATIVE REPORT NO. 88, UPDATES OF SIGNIFICANT ACTS OF THE 67TH LEGISLATURE, at 31-33 (Jan. 13, 1983) (Local-Option Bingo, H.B. 3); HOUSE COMM. ON INTERGOVERNMENTAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 2190, 67th Leg., R.S. (May 15, 1981) (1981 bingo enabling legislation that died in the House); HOUSE STUDY GROUP, SPECIAL LEGISLATIVE REPORT NO. 74, MAJOR ISSUES OF THE 67TH LEGISLATURE, at 66-67 (July 27, 1981).

groups authorized to conduct bingo, some of which must be used for charitable purposes, by ensuring the fair pricing of bingo equipment. *See, e.g.,* TEX. OCC. CODE ANN. § 2001.051(b) (Vernon 2000) (giving Texas Lottery Commission broad authority to "exercise strict control and close supervision over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose"); *id.* §§ 2001.451-.459 (subchapter J, governing bingo accounts and use of proceeds).

In sum, based on the plain language of section 2001.556, the language of its statutory predecessor, its legislative history and apparent purpose, we conclude that section 2001.556 prohibits price fixing agreements between manufacturers and distributors of bingo equipment. Accordingly, in answer to your first question, we conclude that section 2001.556 prohibits a manufacturer and a distributor from agreeing on the price that a distributor will charge for the sale of bingo equipment.

You also ask whether "a manufacturer of bingo equipment and a distributor of bingo equipment [may] agree, expressly or by implication, that the distributor may not unilaterally allow any discounts, credits or other promotional allowances to a charity in connection with the purchase . . . of bingo equipment?" Request Letter, *supra* note 1, at 3. A contract provision that prohibits unilateral discounts, credits, and allowances – terms that affect the ultimate price paid by the consumer – may have the same effect as an agreement to fix prices. In prohibiting implied as well as express price fixing, we believe it is clear that the legislature intended to prohibit terms that fix prices both directly and indirectly. *See* TEX. OCC. CODE ANN. § 2001.556(a) (Vernon 2000) ("A manufacturer, distributor, or supplier may not *by express or implied agreement* with another manufacturer or distributor fix the price) (emphasis added); *see also* TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 1998) ("In construing a statute . . . a court may consider among other matters the . . . object sought to be attained . . . [and the] consequences of a particular construction . . . ."). Therefore, we conclude that the section 2001.556 prohibition extends to an agreement between a manufacturer and a distributor preventing a distributor from offering without the approval of the manufacturer price discounts, credits, or other promotional allowances, as each of these arrangements affects the price paid by the purchaser of bingo equipment. We also note that, in requiring the manufacturer's approval of discounts, credits, and allowances, such an agreement may lead to discussions between the manufacturer and distributor that constitute price fixing.

With respect to these questions, you also ask whether our answers would vary "if the bingo equipment is leased, rather than sold?" Request Letter, *supra* note 1, at 3. Although subsection (a) of section 2001.556 refers to the price at which bingo equipment "may be sold," and could be construed as limited to sales, subsection (b) of that provision states more broadly that "[t]he price of bingo supplies and equipment in the competitive marketplace shall be established by the manufacturer, distributor, or supplier and may not be established in concert with another manufacturer, distributor, or supplier." TEX. OCC. CODE ANN. § 2001.556(b) (Vernon 2000). Based on the broad language of subsection (b), which is not limited to sales, we conclude that the section 2001.556 prohibition on price fixing applies to pricing of bingo equipment generally, and applies to the pricing of leases as well as sales. *See* TEX. GOV'T CODE ANN. § 311.021(2), (3), (5) (Vernon 1998) ("In enacting a statute, it is presumed that: . . . (2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended; . . . (5) public interest is favored over any private interest.").

Finally, you ask "[g]iven the facts stated in this letter and Texas law, is the contract provision cited above unenforceable?" Request Letter, *supra* note 1, at 3. As a general rule, the courts of this state will not enforce an illegal contract. *See Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.–Fort Worth 1992, writ denied) (citing *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947)). As we have noted, however, this office does not review or construe particular contracts. Whether a specific contract provision is unenforceable is an issue that must ultimately be resolved by a court.

## S U M M A R Y

A contract provision between a manufacturer of bingo equipment and a distributor of bingo equipment agreeing to the price at which the distributor will sell or lease bingo equipment would violate section 2001.556 of the Occupations Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee